Quentin M. Rhoades
State Bar No. 3969
Robert Erickson
State Bar No. 9969
RHOADES & ERICKSON PLLC
430 Ryman St.
Missoula, Montana 59802
Telephone: (406) 721-9700
qmr@montanalawyer.com
erickson@montanalawyer.com

Mark P. Meuser
Dhillon Law Group Inc.
177 Post St.
Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
mmeuser@dhillonlaw.com

*Attorneys for Defendant Donald John Trump*

UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JOHN ANTHONY CASTRO,<br><br>Plaintiff,<br><br>v.<br><br>SECRETARY OF STATE CHRISTI JACOBSEN and DONALD JOHN TRUMP,<br><br>Defendants. | Cause No. 6:23-cv-00062-SPW<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS** |

Defendant Donald John Trump ("President Trump") hereby states as follows in reply to Plaintiff's Response to Defendant Donald John Trump's Motion to Dismiss ("Response") (ECF No. 11).[1]

## INTRODUCTION

Plaintiff's Response is a loose collection of non-sequiturs. Plaintiff's Complaint does nothing to establish that his quixotic "candidacy" is a bona fide effort to secure delegates to the Republican National Convention (let alone secure the Republican nomination) nor that he would benefit in any tangible way if President Trump disappeared from the race tomorrow. His Response does nothing to correct these deficiencies. Next, Plaintiff seeks to manufacture a timing-based distinction to avoid political question concerns, but this distinction appears nowhere in and defies the clear logic of the cited case law. In addition, Plaintiff seeks to conflate questions of standing with questions of whether Section 3 provides a self-executing cause of action. This is an irrelevant digression.

---

[1] On Oct. 18, 2023, the Court granted President Trump's Motion for Leave to File Excess Pages. (Doc. 16). President Trump's oversized Motion to Dismiss was filed on October 6, 2023 (Doc. 10). President Trump does not need to make any additional arguments that are not contained in his oversized Motion to Dismiss, which Plaintiff filed a response to on October 9, 2023 (Doc. 11). This Reply does not raise any new arguments. It only addresses those arguments raised in Plaintiff's response.

Finally, Plaintiff completely ignores the substance of several dispositive arguments, effectively conceding them for purposes of assessing a Motion to Dismiss.

At its core, nothing in the Response changes the fundamental fact that the Complaint reflects a meritless claim that this Court lacks jurisdiction to adjudicate. President Trump, therefore, requests that it be dismissed for lack of jurisdiction and/or for failure to state a claim.

## ARGUMENT

### I. Plaintiff Lacks Standing

Plaintiff's standing argument rests upon a chain of speculation that remains untethered to any plausible factual allegation or legal support. In cases brought by this same Plaintiff, two federal courts have already held that his allegations are insufficient to confer Article III standing. *See Castro v. Trump*, Case No. 23-80015-CIV-CANNON (S.D. Fl. June 26, 2023), *cert. denied*, Case No. 23-117, ___ S. Ct. ___, 2023 WL 6379034 (Oct. 2, 2023); *Castro v. FEC*, Civil Action No. 22-2176 (RC), 2022 WL 17976630 (D.D.C. Dec. 6, 2022). Since Plaintiff submitted his Response, three other federal courts have rejected similar actions brought by individual voters based on a lack of standing. *See Schaefer v. Trump et al.*, Case No. 23-cv-1451 JLS (BLM), 2023 WL 6798507 (S.D. Cal. Oct. 13, 2023) (CM/ECF

No. 6, Order Dismissing Complaint for Lack of Standing); *Sladek v. Trump*, Case No. 1:23-cv-02089-LTB-SBP (D. Colo. Oct. 18, 2023) (CM/ECF No. 12); and *Clark v. Weber*, Case No. 2:23-cv-07489-DOC-DFM (C.D. Cal. Oct. 20, 2023) (CM/ECF No. 35).

Plaintiff fails to allege facts sufficient to establish any required showings for Article III standing. The Complaint's highly attenuated claim of injury—President Trump's presence on the 2024 ballot deprives Plaintiff of the political support he needs to win the Republican Party's nomination for the next President of the United States—strains too far. That a vote *may* change in the future is insufficient to establish an injury-in-fact for standing purposes.

Plaintiff's response identifies no authority in support of his alleged competitive injury. An intangible injury might conceivably confer standing if it is "traditionally recognized as providing a basis for lawsuits in American Courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992). And history may support standing when "an alleged intangible harm has a close relationship to a

harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341. But Plaintiff does not, and cannot, identify any congressional or historical support for his effort to challenge the qualifications of a presidential candidate via civil action—much less historical or congressional support for a "competitive injury" alleged by a "candidate" with no political base to speak of. Even in jurisdictions where competitive injury standing is recognized, there is no standing when the injury is attributed to "merely one in a chain of independent causal factors." *Fulani v. Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991). Plaintiff has failed to establish a concrete injury-in-fact.

On traceability, Plaintiff merely states that "the injury is due to Defendant Donald John Trump's unconstitutional pursuit of holding office" and that his allegation "must be accepted as true for purposes of a motion to dismiss." Response at 2. To the contrary, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements . . . required by mere conclusory statements, do not suffice."). Plaintiff's failure to plausibly allege that his political obscurity is traceable to President Trump's planned 2024 candidacy is fatal. In fact, the

little notoriety that Plaintiff alleges that he has garnered is because of President Trump—not because of Plaintiff. *See* Compl. (ECF No. 1) at ¶¶ 34–35 (identifying media attention in connection with Plaintiff's current legal strategy).

Plaintiff lets the mask slip when he argues that his alleged injury is redressable. *See* Response at 2. In his response brief, Plaintiff does not attempt to tie his sought-after redress to his alleged competitive injury. Instead, according to Plaintiff, stopping President Trump's candidacy is redress in its own right. Response at 2. Plaintiff plainly seeks to prosecute a general grievance rather than redress any concrete, de facto injury. This will not do to establish standing. *See Lujan*, 504 U.S. at 573–74 ("[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in the proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.").

President Trump, therefore, requests that the Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing.

6

## II. Plaintiff's Attempted Distinctions are Non-Sequiturs; The Complaint Presents a Nonjusticiable Political Question

As federal courts have widely concluded, challenging a candidate's qualifications for office poses a quintessential political question. *See* President Trump's Memorandum in Support of Motion to Dismiss ("Memorandum in Support") (ECF No. 10-1) at 12–16 (gathering cases). These courts were not fooled, as Plaintiff implies, by a "play on semantics" or "sanctionable frivolity" regarding the political question doctrine. Response at 2, 8. Rather, these decisions acknowledge the clear constitutional commitment of a candidate's qualifications to Congress, not the federal courts. President Trump's Memorandum in Support identifies the constitutional text committing the issue to Congress, Memorandum in Support at 12–16. Caselaw recognizes that this gives rise to a textbook application of the political question doctrine. *Id.*

In his response brief, Plaintiff identifies no authority supporting the exercise of subject matter jurisdiction here. Instead, Plaintiff offers a series of distinctions to the cases cited in President Trump's briefing. These distinctions are ultimately meaningless.

First, Plaintiff asserts this issue has not been committed to a political branch because "the Electoral College Act no longer allow[s] for objections based on

7

qualifications." Response at 6. But this conflates the *Constitution's commitment of the issue to Congress* (which triggers the political question doctrine) with *how Congress chooses to act on it* (which is the political question itself). Moreover, Plaintiff ignores the other constitutional provisions that commit the issue of qualification to Congress. For example, Section 3 of the Fourteenth Amendment gives *Congress* authority to remove any disability under that section. U.S. Const. amend. XIV, § 3. The Twentieth Amendment contemplates procedures and *Congressional* action if an unqualified President-elect takes office. *See* U.S. Const. amend. XX, § 3. The Twenty-Fifth Amendment provides, "*Congress shall decide the issue*" of Presidential incapacity. U.S. Const. amend. XXV (emphasis added). And the Constitution gives *Congress* (and Congress alone) the authority to remove the President from office. *See* U.S. Const. art. I, § 2, cl. 5. Congress's amendments to the Electoral College Act do not erase the political posed here question.

Second, Plaintiff emphasizes that the political question doctrine was an alternative, dicta holding in cases brought to disqualify then-candidates Barack Obama and John McCain. *See Kerchner v. Obama*, 669 F. Supp. 2d 477, 483 at n.5 (D.N.J. 2009), *aff'd*, 612 F.3d 204 (3d Cir. 2010); *Berg v. Obama*, 586 F.3d 234 (3d

8

Cir. 2009); *Grinols v. Electoral College*, No. 2:12-cv-02997-MCE-DAD, 2013 WL 2294885, at *5–7 (E.D. Cal. May 23, 2013); *Robinson v. Bowen*, 567 F. Supp. 2d 1144 (N.D. Cal. 2008). "If these conclusions were dicta, it does not necessarily follow that they were wrong." *Fouts v. Maryland Cas. Co.*, 30 F.2d 357, 359 (4th Cir. 1929). The fact that similar lawsuits suffered *multiple* jurisdictional defects— the same defects presented here—does not support Plaintiff's position.

Third and finally, Plaintiff claims that the political question doctrine "applies only after the major political parties hold their conventions and submit their nomination paperwork to the state for placement on the general ballot." Response at 4. There is no support for this distinction. Plaintiff claims "Courts have held" that this distinction applies, but he cites none. *Id.* at 3. This is because Plaintiff's assertion is a figment of his own imagination. None of the political question cases cited above explicitly or implicitly tie the doctrine's application to whether the action is filed before or after party conventions.

Rather, these decisions recognize that a candidate's qualifications for office are committed to Congress—and Congress alone—without temporal limitation, up to and even after the election. *See, e.g.*, *Grinols*, 2013 WL 2294885, at *4 ("[W]hether President Obama may legitimately run for office and serve as

9

President[] is a political question that the Court may not answer"); *Robinson*, 567 F. Supp. 2d. at 1147 ("Judicial review—if any—should occur only after the electoral and Congressional processes have run their course.").

Plaintiff's purported distinctions to the universe of caselaw dedicating candidate qualifications to Congress rather than the federal courts are unsupported and unavailing. President Trump, therefore, requests that the Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) under the political question doctrine.

### III. Section Three is Not Self-Executing, and Plaintiff's Claim to the Contrary is Ahistorical

As outlined in detail in President Trump's Memorandum in Support, Section Three is not self-executing; it requires an act of Congress to effectuate in federal court. *See* Memorandum in Support at 17–20. So held Chief Justice Salmon P. Chase one year after the Fourteenth Amendment's ratification. *In re Griffin*, 11 F.Cas. 7 (C.C.Va. 1869). In response, Congress enacted (and later repealed) the Enforcement Act, which allowed federal district attorneys to enforce Section Three in federal court. *See* Enforcement Act, Sections 14–15 (1870). Were individual plaintiffs, individual secretaries of state, or individual federal courts vested authority to enforce Section Three in the absence of Congressional

10

authorization, a patchwork of 51 state and district election laws would cause an intractable crisis.

Plaintiff's rebuttal argument is flatly wrong. Plaintiff claims that the "1870 Enforcement Act was created to grant individuals (i.e., law enforcement) that otherwise did not have a direct injury . . . to remove public officials holding office in violation of Section Three." Response at 8. In other words, according to Plaintiff, Section Three was always self-executing and actionable by any aggrieved private party—but Congress enacted the Enforcement Act to give that same authority to district attorneys, too.

This effectively conflates questions of standing with questions of whether Section 3 provides a private right of action. It is also ahistorical. The Fourteenth Amendment itself provides that "*Congress* shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5 (emphasis added). One year after the Fourteenth Amendment's ratification, the Chief Justice of the Supreme Court rejected an attempt to disqualify a sitting judge under Section Three by a petitioner whom that judge had recently sentenced. *In re Griffin*, 11 F.Cas. 7 (C.C.Va. 1869). The Chief Justice denied the petition, holding that Section Three "clearly requires legislation in

11

order to give effect to it," that it is "beyond reasonable question" that Section Three is "to be made operative . . . by legislation of congress in its ordinary course," and that to allow petitioner to enforce it himself would unleash "manifold evils." *Id.* One year later, Congress enacted the Enforcement Act, which reads, "[I]t shall be the duty of the district attorney of the United States . . . to proceed against a [violator of Section Three] . . . and to prosecute the same to the removal of such person from office."

At this time, no implementing legislation executes Section Three. The original Enforcement Act was codified as 13 Judiciary ch. 3, sec. 563 and later recodified into 28 Judicial Code 41 — but in 1948, Congress repealed 28 U.S.C. § 41 in its entirety. *See* Act of June 25, 1948, ch. 646, § 39, 62 Stat. 869, 993; see also Act of June 25, 1948, ch. 645, § 2383, 62 Stat. 683, 808. More recent efforts to enact a cause of action under Section Three have died in Congress. *See* H.R. 1405, 117th Cong. 2021.

Plaintiff's revisionism is entitled to no credence. Section Three is not self-executing, and Plaintiff fails to state a plausible claim to the contrary. President Trump, therefore, requests that the Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## IV. Plaintiff Fails to Confront President Trump's Remaining Bases for Dismissal, Which Each Remain Independently Dispositive

President Trump also moved to dismiss the Complaint because (i) Section Three does not apply to the President of the United States and (ii) there is no plausible allegation that President Trump engaged in any conduct proscribed by Section Three. *See* CM/ECF No. 10 at 20–38. The fact that Section Three applies neither to President Trump nor his alleged conduct is well supported by the text and history of Section Three itself. Plaintiff offers no rebuttal to these arguments. His failure to do so constitutes a waiver that permits this Court to dismiss on the "uncontroverted bases asserted." *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004); *see also, e.g., United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) ("Generally, an appellee waives any argument it fails to raise in its answering brief."); *Jeffrey C. v. Kijakazi*, Case No. 3:22-cv-79-SI, 2023 WL 4760603, at *3 n.2 (D. Or. Jul. 26, 2023) (applying waiver principles to district court pleadings and noting even a "conclusory statement is insufficient to preserve the Commissioner's arguments on appeal.").

These unrebutted arguments doom Plaintiff's case. Even if this Court were to decline to enforce a waiver due to Plaintiff's pro se status, his failure to address these arguments shines a spotlight on his substantive failure to state a

13

claim. Section Three applies to "officer[s] of the United States" who have "taken an oath . . . to support the Constitution." U.S. Const. amend. XIV, § 3. Both the Constitution itself and judicial interpretations of it distinguish between "officers of the United States" and the President—and the former does not include the latter. Memorandum in Support at 23–25 (citing *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 497–98 (2010); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, n.3 (2020)). And while some officers of the United States take the oath described in Section Three, the President does not. *See id*. Section Three does not apply to President Trump, and Plaintiff's failure to establish that it does is fatal.

Nor does Section Three apply to his alleged conduct. Section Three proscribes those who "have engaged in insurrection or rebellion against [the United States], or given aid or comfort to the enemies thereof." U.S. Const. amend. XIV, § 3. There is no plausible allegation that President Trump did either of those things. Memorandum in Support at 25–38. The January 6 riot was not an "insurrection" or "rebellion" as understood by the drafters of the Fourteenth Amendment; President Trump did not "engage" (or even "incite") the riot under any standard; and providing "aid or comfort to the enemy" refers to foreign

14

powers at war with the United States, not alleged political dissidents. *See id.* Because Plaintiff cannot plausibly allege any conduct violative of Section Three, Plaintiff re-writes Section Three to say what it does not. Plaintiff fails to address any of the several ways he misreads Section Three in his response brief. Ignoring both the text and the meaning of the provision Plaintiff seeks to enforce here does not give rise to a plausible claim for relief.

President Trump, therefore, requests that the Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## CONCLUSION

For the reasons stated above and in President Trump's Memorandum in Support, President Trump requests that the Complaint be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).

DATED this 23rd day of October 2023.

Respectfully Submitted,
RHOADES & ERICKSON PLLC                           Dhillon Law Group Inc.

By: *Quentin M. Rhoades*                          By: *Mark P. Meuser*
   Quentin M. Rhoades                                Mark P. Meuser

By: *Robert Erickson*
   Robert Erickson

15

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7, I certify that Defendant's Reply in Support of Motion to Dismiss is printed with proportionately spaced Equity text typeface of 14 point and double-spaced, except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word is 2,826 words, excluding this certificate of compliance.

/s/ *Quentin M. Rhoades*
Quentin M. Rhoades

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Montana, using CM/ECF system.    Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

DATED this 23rd day of October 2023.


By: *Quentin M. Rhoades*
    Quentin M. Rhoades